**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SAMUEL GURULE and
SENAIDA GURULE,

Plaintiffs,

v.

Case No. 1:26-cv-02906-MIS-JFR

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

Defendant.

# ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS MATTER is before the Court on Defendant Travelers Casualty Insurance Company of America's Motion to Dismiss ("Motion"), ECF No. 5, filed September 10, 2026. Plaintiffs Samuel and Senaida Gurule filed a Response on October 5, 2026 ("Response"), ECF No. 13, to which Travelers filed a Reply on October 19, 2026 ("Reply"), ECF No. 14. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Motion.

## I. Background

### a. Facts[1]

Travelers issued Plaintiffs a homeowners' insurance policy ("Policy") covering Plaintiffs' home and other structures. Compl. ¶ 5(a),[2] ECF No. 1-1. In 2023 and 2024, the roof on Plaintiffs' casita suffered hail and wind damage. Id. ¶ 6(a). After Plaintiffs submitted a claim for repairs,

[1] The Court accepts the truth of all well-pleaded factual allegations in Plaintiffs' Complaint and draws all reasonable inferences in Plaintiffs' favor.

[2] The Complaint contains two paragraphs numbered 5, 6, 7, and 8. When the Court cites to Paragraph "5(a)," "6(a)," and so on, it is citing to the first paragraphs numbered 5 and 6 (and so on), sequentially. When the Court cites to Paragraph "5(b)," "6(b)," and so on, it is citing to the second paragraphs numbered 5 and 6 (and so on), sequentially.

Travelers sent an adjuster to evaluate the roof. Id. ¶¶ 7(a)-8(a). The adjuster "failed to note in his inspection that the roof decking was old and damaged, and had to be replaced in connection with any attempted roofing work." Id. ¶ 5(b). Travelers offered Plaintiffs $2,038.97 for all repairs after applying a deductible and a deduction for depreciation. Id. ¶ 10. Two local roofing contractors estimated the cost of repairs to be $9,598.02 and $9,703.16, respectively. Id. ¶¶ 7(b)-8(b).

**b. Policy**

The Policy's Declarations page reflects a $1,500 deductible for windstorm and hail damage that states: "In case of loss under the Property Coverage Section, only that part of the loss over the applicable deductible will be paid (up to the coverage limit that applies)." ECF No. 5-1 at 5. Additionally, the last page of the Declarations states: "SPECIAL WINDSTORM DEDUCTIBLE APPLIES: SEE ENDORSEMENT HQ-313." Id. at 7. Endorsement HQ-313—the Policy's Windstorm or Hail Deductible endorsement—states:

> The Windstorm or Hail Deductible shown in the Declarations replaces any other deductible provision in this policy with respect to loss caused directly or indirectly by the peril of windstorm or hail.
>
> We will pay only that part of the total of all loss payable, for any one loss, under the Property Coverage Section of this policy that exceeds the Windstorm or Hail Deductible shown in the Declarations.
>
> No other deductible applies to loss or damage caused by windstorm or hail.
>
> All other provisions of this policy apply.

Id. at 52.

The Policy also contains conditions regarding Travelers' obligation to provide coverage on a repair or replacement cost basis without deduction for depreciation. Id. at 29-30. Relevant here, the Policy states:

> We will pay no more than the actual cash value of the damage until actual repair or

> replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in Property Condition 3. Loss Settlement b.(1) and b.(2).

Id. at 30 (emphasis added). In turn,

> Actual cash value means the value of the covered property at the time of loss or damage.
>
> When calculating actual cash value using the estimated cost to repair or replace such property, with a reasonable deduction for depreciation that occurred before such loss or damage, we may apply depreciation to all components of the estimated cost, including the following:
>
> a. Materials;
> b. Labor;
> c. Overhead and profit; and
> d. Any applicable tax.
>
> The deduction for depreciation may include such considerations as:
>
> a. Age;
> b. Condition, such as wear and tear or deterioration;
> c. Reduction in useful life; and
> d. Obsolescence.

Id. at 48 (emphasis added). Finally, where replacement costs are available, Property Condition 3, Loss Settlement b.(1) and b.(2) state:

> b. Buildings covered under Property Coverages A or B at replacement cost without deduction for depreciation, subject to the following:
>
> (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the replacement cost, without deduction for depreciation, but not more than the least of the following amounts:
>
> (a) The limit of liability under this policy that applies to the building;
> (b) The replacement cost of that part of the building damaged with materials of like kind and quality and for like use; or
> (c) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in 3.b.(1)(b) is limited to the cost which would have been incurred if the building had been built at the original premises.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the replacement cost, <u>without deduction for depreciation</u>, for that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

ECF No. 5-1 at 30 (emphases added).

**c. Procedural history**

On July 23, 2026, Plaintiffs initiated this lawsuit by filing a Complaint for Damages ("Complaint") in the Second Judicial District Court in Bernalillo County, New Mexico. ECF No. 1-1. Count I alleges Travelers violated New Mexico's Insurance Code, N.M. Stat. Ann. ¶ 59A-18-17(C), when it applied both a deductible and a deduction for depreciation to its offer of coverage. <u>Id.</u> ¶¶ 12-22. Count I also alleges that Travelers violated New Mexico's Unfair Insurance Practices Act ("UIPA"), N.M. Stat. Ann. § 59A-16-20, by:

A. Misrepresenting to [Plaintiffs] the facts and policy provisions relating to the damage to the Casita and its repairs[;]

B. Failing to adopt and implement reasonable standards for the prompt investigation and process of its insureds' claims;

C. Not attempting in good faith to effectuate a prompt, fair and equitable settlement of [Plaintiffs'] claims[; and]

D. Compelling insureds to institute litigation to recover amounts due under the policy by offering substantially less than the amounts the insurer either knows or should know that it should pay in reasonably similar circumstances.

Id. ¶ 23. Count II alleges that Travelers breached the insurance contract "by failing to reasonably pay on the claim in compliance with the terms of the policy documents as set forth above by failing to pay the 'actual cash value' of the damage timely." Id. ¶ 28. Count III alleges that Travelers breached the implied covenant of good faith and fair dealing by acting "in bad faith by preventing [Plaintiffs] from realizing the benefits of the policy" and by refusing "to work in good faith with [Plaintiffs] in a commercially reasonable manner to obtain a reasonable and timely payment of their claim." Compl. ¶¶ 31-32.

On September 3, 2026, Travelers removed the case to the United States District Court for the District of New Mexico, invoking the Court's diversity jurisdiction. Notice of Removal ¶¶ 6-18.[3]

On September 10, 2026, Travelers filed the instant Motion to Dismiss for failure to state a claim. ECF No. 5. Plaintiffs filed a Response, ECF No. 13, to which Travelers filed a Reply, ECF No. 14.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." Id. Mere "labels and conclusions" or "a formulaic recitation of

[3] Based on the Notice of Removal, the Court is satisfied that the Parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

## III. Discussion

Travelers argues that it correctly applied a deductible and a deduction for depreciation to Plaintiffs' coverage payment. Mot. at 4-9. Specifically, it argues that the unambiguous terms of the Policy's Declarations page and Windstorm and Hail Endorsement permitted Travelers to apply a deductible, id. at 4-5; and because no repair or replacement was completed, it was entitled to offer coverage on an actual cash value basis, which the Policy defines to include a deduction for depreciation, id. at 5-6. It argues that it is only after repairs or replacements are completed that Plaintiffs are entitled to coverage based on a repair or replacement valuation without deduction for depreciation under Property Condition 3. Loss Settlement b.(1) and b.(2), and the Complaint does not allege Plaintiffs satisfied the condition precedent (i.e., performing repairs or replacement). Id. at 6-9. It argues that assuming arguendo that N.M. Stat. Ann. § 59A-18-17(C) applies to casitas, Property Condition 3. Loss Settlement b.(1) and b.(2) complies with the statute because it provides coverage for the cost to repair or replace without deduction for depreciation. Id. at 7. It argues that Plaintiffs' failure to satisfy the condition precedent supports dismissal of the breach of contract claim (Count II), id. at 9 (citing Rodriguez v. Sanchez, 536 P.3d 543, 547 (N.M. Ct. App. 2023)), and breach of the implied covenant of good faith and fair dealing claim (Count III) because they are based on the same alleged conduct, id. at 9-10 (citations omitted). Alternatively, Travelers argues that Counts I and III fail to state claims upon which relief can be granted because they "fail

to provide even a modicum of factual support from which the Court could draw a reasonable inference that Travelers is liable for the misconduct alleged." Id. at 10-11; see also id. at 11-12.

Plaintiffs initially argue that because Travelers asks the Court to analyze the Policy, the Court should provide notice that it is treating the Motion as one for summary judgment. Resp. at 1 (citation omitted). They further argue that, in any event, the Policy is not presented in admissible form, id. at 2 (citing D.N.M.LR-Civ. 7.3), its authenticity is therefore disputed, and it is not properly before the Court, id.[4] On the merits, Plaintiffs appear to argue that Travelers cannot enforce the "condition precedent" to paying repair or replacement costs because:

> (1) Travelers did not disclose this term of the policy at the time it was sold to Plaintiffs, (2) Travelers did not provide Plaintiffs a copy of the policy at the time it was sold, (3) it is contrary to the usual and customary practice for a homeowners' policy such that it is contrary to the reasonable expectations of the insured, and thus, and [sic] (4) this was a material omission under the UPA[5] which tended to deceive Plaintiffs about the value or terms of the policy.

Id. at 3 (citing Decl. of Samuel Gurule, Resp., Ex. B, ECF No. 13 at 10) (footnote in original).[6] They argue that the Policy is "ambiguous as a whole as to what kinds of claims are to be paid 'immediately' versus 'you pay first for repairs and then seek reimbursement later' and because this term was not presented to Plaintiffs' at the time the policy was sold, any 'tie' must go to the insured under New Mexico law." Id. at 4 (citing Kane v. Syndicate 2623-623 Lloyd's of London, 584 P.3d

---

[4] Plaintiffs counsel submits an affidavit under Federal Rule of Civil Procedure 56(d) "regarding discovery they seek to conduct which would allow them to oppose the [converted] Motion [for summary judgment]." Resp. at 2 (citing Resp., Ex. A, ECF No. 13 at 8). Because the Court finds that the Motion should not be converted to one for summary judgment, the Court need not address Plaintiffs' counsel's affidavit.

> [5] NMSA 1978, § 57-12-2(D)(14) states that a material omission in the sale of a good or service which deceives or even "tends to deceive" can violate the Unfair Practices Act. Of course the sale of insurance involves the sale of a service. The Unfair Insurance Practices Act, Section 59A-16-4, similarly bans an insure from failing to "disclose material facts reasonably necessary to prevent other statements made from being misleading."

[6] These allegations do not appear in the Complaint. Whether the Complaint plausibly alleges that Travelers violated the Unfair Insurance Practices Act is discussed in Section III(b)(2), infra.

1079, 1084 (N.M. Ct. App. 2025)). They argue that, at a minimum, "the question of whether the 'reimbursement later' term was disclosed and part of the basis of the bargain is disputed and is a fact question that is not resolved by mere reference to the policy language[,]" and that "if there was no meeting of the minds on that specific term, Travelers cannot even enforce such a term." Id. Finally, Plaintiffs argue that to the extent the Complaint fails to state a claim, the Court should permit amendment. Id. at 5-6.

In its Reply, Travelers initially states that the Court may consider the Policy without converting the Motion into one for summary judgment because it is referred to in the Complaint and is self-authenticating under the Federal Rules of Evidence because it was certified by a records custodian. ECF No. 14 at 1-2 (citing United States v. Trevino, No. CR 2:23cr0066 RB, 2024 WL 1701905, at *1 (D.N.M. Apr. 20, 2024)). It argues that Plaintiffs' "authenticity" argument is disingenuous because they "rely on the insurance policy in their Complaint, quote and reference insurance policy provisions, . . . assert claims that depend upon the insurance policy's terms[,]" "do not identify any discrepancy between the certified policy attached to Travelers' Motion to Dismiss and the policy alleged in the Complaint," and do not "dispute that it is the policy at issue in this case." Id. at 2. On the merits, Travelers argues that Plaintiffs "concede that Travelers properly applied the Windstorm or Hail Deductible by failing to provide any objection or counterargument in their [Response]." Id. at 3 (citations omitted). As such, it argues that applying the deductible is "not a ground which could ever support Plaintiffs' UIPA, breach of contract, and breach of the covenant of good faith and fair dealing claims." Id. Travelers further maintain that Plaintiffs' failure to satisfy the condition precedent to receiving repair or replacement costs permitted it to apply a deduction for depreciation consistent with the Policy and New Mexico law. Id. at 3-5. Finally, it argues that "policy provisions b.(1) and b.(2) provide coverage for the cost

to repair or replacement without deduction for depreciation in accordance with §59A-18-17(C)'s requirement that '[i]nsurance coverage provided in residential property insurance policies shall provide coverage for the cost to repair or replace without deduction for depreciation.'" Id. at 5.

**a. The Court may consider the Policy without converting the Motion to one for summary judgment**

First, the Court finds that it may consider the Policy without converting the Motion into one for summary judgment.

Generally, "[a] 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court' and 'all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(b)). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." Id. (citations omitted). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." Id. at 1385.

Here, Plaintiffs refer to the Policy in the Complaint, and it is central to all their claims. See Compl. ¶¶ 5, 17, 23, 25-29, 31. Travelers attached a copy of the Policy as an exhibit to their Motion that contains a certification from Peter J. Michalik, Travelers' Director of Operations Document Management, which states: "This is to certify that this is a reproduction, from the company's records, of the insurance policy between the insured and the insuring company as

described on the Declarations Page. It is a full, true and complete reproduction of the insurance policy. No additional insurance is afforded by this copy." ECF No. 5-1 at 2.

Plaintiffs purport to dispute the Policy's authenticity because Mr. Michalik's certification "is neither sworn nor made subject to perjury[,]" and Local Rule 7.3(b) requires parties to support allegations of fact with evidence "in the form of declarations, affidavits, deposition excerpts, or other documents[.]" Resp. at 2. The Court finds that Plaintiffs' dispute is not genuine. To begin with, to the extent Travelers submitted the Policy to support any "allegations of fact," Plaintiffs do not explain why the certified Policy is not an "other document[]" permitted by Local Rule 7.3(b). The Court finds that it is. And in any event, Plaintiffs fail to identify any discrepancy between the certified Policy attached to the Motion and the policy alleged in the Complaint, nor do they dispute that it is the policy at issue in this case. That is, they do not genuinely dispute its authenticity.

The Court considers the Policy attached to the Motion to be an indisputably authentic copy and proper for consideration on a motion to dismiss. See Dreyer v. Am. Nat'l Prop. & Cas. Co., Civil Action No. 18-cv-03334-MSK-SKC, 2019 WL 3002927, *3 n.3 (D. Colo. July 10, 2019) (considering insurance policy attached to motion to dismiss and certified by a supervisor at the insurance company as a full and complete copy of the at-issue policy to be "indisputably accurate" for purposes of the motion); cf. Sexton v. Am. Nat'l Prop. & Cas. Co., No. 14–2384–EFM–JPO, 2015 WL 4523823, at *2 (D. Kan. July 28, 2015) (considering an insurance policy attached to a motion to dismiss without converting the motion to one for summary judgment).

**b. The Complaint fails to state a claim upon which relief can be granted**

The Court finds that the Complaint fails to plausibly allege that Travelers offered to settle Plaintiffs' claims for less than what was required by the Policy, and therefore it fails to state a claim

upon which relief can be granted. The Court will begin by addressing why Count II fails to state a claim for breach of contract, and then explain why Counts I and III fail to state claims.

### 1. Count II

Count II alleges that Travelers breached the contract of insurance "by failing to pay on the claim in compliance with the terms of the policy documents as set forth above by failing to pay the 'actual cash value' of the damage timely." Compl. ¶ 28. Specifically, they allege that Travelers violated the terms of the Policy by applying a deductible and a deduction for depreciation before offering a coverage payment. See id. ¶¶ 17 ("Travelers attempted to apply both a deductible and depreciation from the claim of [Plaintiffs], in contravention of the express promises in its policy of insurance.").

Under New Mexico law, the elements of a breach of contract claim are "the existence of [a] contract, breach of the contract, causation, and damages." Cent. Mkt., Ltd., Inc. v. Multi-Concept Hosp., LLC, 508 P.3d 924, 935 (N.M. Ct. App. 2022).

The Court finds that the Complaint fails to plausibly allege a breach of the insurance contract. The Complaint alleges that Plaintiffs submitted a claim to Travelers for wind and hail damage. Compl. ¶¶ 6-7. The Policy's Declarations page reflects a $1,500 deductible for windstorm and hail damage that states: "In case of loss under the Property Coverage Section, only that part of the loss over the applicable deductible will be paid (up to the coverage limit that applies)." ECF No. 5-1 at 5. Additionally, the last page of the Declarations states: "SPECIAL WINDSTORM DEDUCTIBLE APPLIES: SEE ENDORSEMENT HQ-313." Id. at 7. Endorsement HQ-313—the Policy's Windstorm or Hail Deductible endorsement—states:

> The Windstorm or Hail Deductible shown in the Declarations replaces any other deductible provision in this policy with respect to loss caused directly or indirectly by the peril of windstorm or hail.

> We will pay only that part of the total of all loss payable, for any one loss, under the Property Coverage Section of this policy that exceeds the Windstorm or Hail Deductible shown in the Declarations.
>
> No other deductible applies to loss or damage caused by windstorm or hail.
>
> All other provisions of this policy apply.

Id. at 52. Because the unambiguous terms of the Policy apply a $1,500 deductible to windstorm and hail damage, the Complaint fails to plausibly allege that Travelers violated the terms of the Policy by applying a deductible to Plaintiffs' claim.

Furthermore, the Policy unambiguously states that when Travelers is obligated to provide coverage on an actual cash value basis, "a reasonable deduction for depreciation" applies. Id. at 48 ("When calculating actual cash value using the estimated cost to repair or replace such property, with a reasonable deduction for depreciation that occurred before such loss or damage, we may apply depreciation to all components of the estimated cost . . . ."). The Policy also unambiguously states that Travelers "will pay no more than the actual cash value of the damage until actual repair or replacement is complete." Id. at 30.

Here, the Complaint does not allege that Plaintiffs completed any repairs or replacements; in fact, it appears to allege the opposite. Compl. ¶ 11 (alleging that Travelers' $2,038.97 offer of coverage "does not reasonably allow [Plaintiffs] to even begin roofing repairs . . . ."). Because the Complaint does not allege that Plaintiffs completed any repairs or replacements, the Policy only obligates Travelers to provide coverage on an actual cash value basis, ECF No. 5-1 at 30, and the Policy permits Travelers to calculate actual cash value "with a reasonable deduction for depreciation[,]" id. at 48. Consequently, the Complaint fails to plausibly allege that Travelers violated the terms of the Policy by offering coverage that included a deduction for depreciation.

For these reasons, the Court finds that the Complaint fails to state a claim for breach of contract.

**2. Count I**

Count I appears to allege that Travelers violated New Mexico's Insurance Code, N.M. Stat. Ann. ¶ 59A-18-17(C), id. ¶¶ 14-17, and New Mexico's Unfair Insurance Practices Act ("UIPA"), N.M. Stat. Ann. § 59A-16-20, id. ¶ 23.

**A. The Complaint fails to allege a violation of New Mexico's Insurance Code**

Next, Count I alleges that Travelers violated N.M Stat. Ann. § 59A-18-17(C), which provides: "Insurance coverage provided in residential property insurance policies shall provide coverage for the cost to repair or replace without deduction for depreciation. If the insured elects to effectuate repairs to the property by the insured's own self, a reasonable overhead expense shall be allowed."

Here, the Policy provides coverage for the cost to repair or replace without deduction for depreciation. Specifically, Property Condition 3, Loss Settlement b.(1) and b.(2) state:

> b. Buildings covered under Property Coverages A or B at replacement cost without deduction for depreciation, subject to the following:
>
> (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the replacement cost, without deduction for depreciation, but not more than the least of the following amounts:
>
> (a) The limit of liability under this policy that applies to the building;
> (b) The replacement cost of that part of the building damaged with materials of like kind and quality and for like use; or
> (c) The necessary amount actually spent to repair or replace the damaged building.

> If the building is rebuilt at a new premises, the cost described in 3.b.(1)(b) is limited to the cost which would have been incurred if the building had been built at the original premises.
>
> (2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:
>
> (a) The actual cash value of that part of the building damaged; or
>
> (b) That proportion of the replacement cost, <u>without deduction for depreciation</u>, for that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

ECF No. 5-1 at 30. Because the Policy provides coverage for the cost to repair or replace without deduction for depreciation, the Policy complies with N.M Stat. Ann. § 59A-18-17(C).

To the extent Plaintiffs allege that Travelers violated Section 59A-18-17(C) because it offered coverage that applied a deduction for depreciation, the claim fails for the reasons explained in Section III(b)(1), <u>supra</u>. Specifically, because the Complaint does not allege that Plaintiffs completed any repairs or replacements, the Policy only obligates Travelers to provide coverage on an actual cash value basis, ECF No. 5-1 at 30, and the Policy permits Travelers to calculate actual cash value "with a reasonable deduction for depreciation[,]" <u>id.</u> at 48.

For these reasons, Count I fails to plausibly allege a violation of N.M Stat. Ann. § 59A-18-17(C).

**B. The Complaint fails to allege violations of UIPA**

Next, Count I alleges that Travelers violated UIPA, N.M. Stat. Ann. § 59A-16-20, by:

> A. Misrepresenting to [Plaintiffs] the facts and policy provisions relating to the damage to the Casita and its repairs[;]

> B. Failing to adopt and implement reasonable standards for the prompt investigation and process of its insureds' claims;
> C. Not attempting in good faith to effectuate a prompt, fair and equitable settlement of [Plaintiffs'] claims[; and]
> D. Compelling insureds to institute litigation to recover amounts due under the policy by offering substantially less than the amounts the insurer either knows or should know that it should pay in reasonably similar circumstances.

Id. ¶ 23. The factual basis for these alleged violations appears to be Traveler's application of a deductible and deduction for depreciation to its offer of coverage. See id. ¶¶ 17-22. Plaintiffs do not mention Section 59A-16-20 in their Response brief.

The Court finds that Count I fails to plausibly allege that Travelers violated N.M. Stat. Ann. § 59A-16-20. The Complaint contains no factual allegations whatsoever regarding Travelers' failure to promptly investigate and process Plaintiffs' claims or attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claims. To the extent Count I alleges that Travelers violated UIPA because it offered coverage that applied a deductible and deduction for depreciation, the claim fails for the reasons explained in Section III(b)(1), supra. Specifically: (1) the Policy unambiguously applies a $1,500 deductible to claims for windstorm and hail damage, ECF No. 5-1 at 5, 7, 52; and (2) because the Complaint does not allege that Plaintiffs completed any repairs or replacements, the Policy only obligates Travelers to provide coverage on an actual cash value basis, ECF No. 5-1 at 30, and the Policy permits Travelers to calculate actual cash value "with a reasonable deduction for depreciation[,]" id. at 48. And the Complaint otherwise fails to plausibly allege that Travelers offered "substantially less" than the Policy required.

For these reasons, Count I fails to plausibly allege any violations of UIPA.

### 3. Count III

Finally, Count III alleges that Travelers breached the implied covenant of good faith and fair dealing by acting "in bad faith by preventing [Plaintiffs] from realizing the benefits of the policy" and by refusing "to work in good faith with [Plaintiffs] in a commercially reasonable manner to obtain a reasonable and timely payment of their claim." Compl. ¶¶ 31-32.

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Watson Truck & Supply Co., Inc. v. Males, 801 P.2d 639, 642 (N.M. 1990) (citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." Id. (quotation marks and citation omitted). "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." Sanders v. FedEx Ground Package Sys., Inc., 188 P.3d 1200, 1203 (N.M. 2008) (quotation marks and citation omitted). "[T]he implied covenant cannot be used to impose a contractual obligation that would contradict a clear, unambiguous and express term of the contract." Id. at 1207.

For the reasons explained in Section III(b)(1), supra, the Complaint fails to plausibly allege that Travelers prevented Plaintiffs from realizing the benefits of the Policy or obtaining a reasonable and timely payment of their claim. Consequently, Count III fails to state a claim for breach of the implied covenant of good faith and fair dealing.

## IV. Conclusion

Therefore, it is **HEREBY ORDERED** that:

**1.** Defendant's Motion to Dismiss, ECF No. 5, is **GRANTED**;

**2.** The Complaint, ECF No. 1-1, is **DISMISSED WITHOUT PREJUDICE**;

**3.** Plaintiffs shall have **FOURTEEN DAYS** to file an amended complaint, if they wish to do so; and

**4.** Failure to timely file an amended complaint will result in the Court closing this case and entering final judgment.

Margaret Strickland

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE