UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMUEL GURULE,
SENAIDA GURULE,

Plaintiffs,

v. No. 1:26-cv-02906-JMR-JFR

TRAVELERS CASUALTY INSURANCE
CO. OF AMERICA,
ADVANCED AMERICAN INSURANCE, INC, a New Mexico for-profit corporation,
MARIANA CARRASCO, a citizen of Texas,

Defendants.

**FIRST AMENDED COMPLAINT**

COME NOW, Plaintiffs Samuel Gurule and Senaida Gurule ("**Consumers**") through their counsel, David C. Kramer (Law Office of David C. Kramer, LLC), and for their First Amended Complaint do state:

## I. PARTIES, JURISDICTION AND VENUE

1. Consumers are residents of Bernalillo County, New Mexico. On

2. Defendant Travelers Casualty Insurance Company of America, ("**Travelers**") was the homeowners' insurer for Consumers at all times material to the allegations herein. Travelers is subject to the jurisdiction of the New Mexico Office of the Superintendent of Insurance ("**OSI**") as a registered insurance provider in this state.

3. Defendant Advanced American Insurance, Inc., ("**Advanced**") is a New Mexico for-profit corporation with its primary offices located at 6301 Fourth Street NW, Suite 1, Albuquerque, NM 87107. Public records of the Secretary of State reflect that Advanced's President and registered agent is Mike Stroup with an address of "**3 Aztec**

**Court, Placitas, NM, 87043**." At all times material to these allegations, Advanced was the sales agent of certain homeowners' insurance to Consumers. At all times material to these allegations, Advanced sold policies of insurance to New Mexico consumers.

4. At all times material to the allegations herein, Mariana Carrasco ("**Carrasco**"), who is now (upon information and belief) a citizen or resident of Texas, was an employee, agent, or ostensible agent of Advanced and sold a certain policy of homeowners' insurance to Consumers. Carrasco made various representations to Consumers about the nature and extent of the coverages provided for in the homeowners' policy of insurance which Consumers purchased. At all times material to the allegations here, Carrasco was acting the course and scope of her employment or agency with Advanced.

5. Jurisdiction and venue for the claims herein are proper in the New Mexico State Courts because Advanced is a citizen of New Mexico, and the conduct in issue in the allegations below all took place in New Mexico. Plaintiffs aver that the presence of Advanced as a party destroys diversity jurisdiction of this Court due to lack of complete diversity under 28 U.S.C. § 1332. By filing this First Amended Complaint, Consumers do not consent to jurisdiction in this Court.

## II. FACTS COMMON TO ALL COUNTS

6. In 2024, Travelers insured Consumers' home and other structures with a policy of insurance ("**Policy"**), policy number ending in "**633-1**."

7. Defendant Advanced was the sales agent for the Policy and Consumers primary dealt with Carrasco at the offices of Advanced.

8. During the sale or promotion of the Policy by Advanced and Carrasco, at no time did Advanced or Carrasco inform Consumers that certain types of claims made under the Policy would not provide immedicate coverage for damages to Consumers' home, but would be a "you pay now, get reimbursed later" type of arrangement for such claims.

9. Such an omission was a material omission because it tended to cause confusion about the terms and benefits of the Policy and was deceptive in light of the usual and customary processing and payment of claims under a policy of homeowner's insurance.

10. On three (3) occasions in 2023 and 2024, the roof on a structure on Consumers' land ("**Casita**") was damaged by hail and wind.

11. Consumers timely submitted a claim for repairs to Travelers under the Policy, claim number "**I6J4476**."

12. Travelers sent out an adjuster to Consumers' property to evaluate the roof and hail or wind damage.

12. This adjuster, Seth Abeyta, failed to note in his inspection that the roof decking was old and damaged, and had to be replaced in connection with any attempted roofing work.

13. This adjuster also mistakenly imposed a deductible on Consumers.

14. Consumer obtained an estimate of work from a local roofing contractor for such work in the amount of $9,598.02.

15. Consumer obtained a second estimate of such work from a local roofing contractor and that estimate was $9,703.16.

16. Travelers offered a payment to Consumers in the amount of $2,038.97 for all repairs, after it applied both a deductible and depreciation.

17. At no time since making this opening offer has Travelers actually tendered payment to Consumers in an amount greater than $2,038.97.

18. Such a low payment does not reasonably allow Consumers to even begin roofing repairs which were covered by Travelers' policy of insurance.

19. Further, the policy terms of "you fix it, we will pay you back later" are unreasonable, and were not disclosed to Consumers by Defendant Advanced or its employee, Defendant Carrasco, in connection with the sale of the policy.

20. This was a material omission that tended to deceive Consumers about the value or key terms of the policy or its benefits and was in violation of the Unfair Practices Act, NMSA 1978, § 57-12-3.

21. Travelers and its agents, Advanced and Carrasco, did not disclose the key terms of the policy at the time it was sold to Plaintiffs.

22. Travelers and its agents, Advanced and Carrasco, did not provide Plaintiffs a copy of the policy at the time it was sold.

23. Such terms of the Policy are contrary to the usual and customary practice for a homeowners' policy (which is that the insurer will timely adjust such a claim and pay for repairs) such that it is contrary to the reasonable expectations of the insured.

24. Thus this was a material omission which tended to deceive Consumers about the value or terms of the policy.

**COUNT I – VIOLATIONS OF THE UNFAIR INSURANCE PRACTICES ACT**

**(ALL DEFENDANTS)**

25. All foregoing allegations are re-alleged here.

26. NMSA 1978, § 59A-18-17(C) states that:

27. **C. Insurance coverage provided in residential property insurance policies shall provide coverage for the cost to repair or replace *without deduction for depreciation*. If the insured elects to effectuate repairs to the property by the insured's own self, a reasonable overhead expense shall be allowed. (emphasis added)**

28. While this section permits an insurer to modify or amend such "standard" provisions in policies of insurance by way of a "substitute provision," it must do so in a manner that is not "not less favorable" to the insured. *See McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, 135 N.M. 17.

29. In this case, Travelers' homeowners' policy states:

i. Buildings[1] covered under Property Coverages A or B at replacement cost without deduction for depreciation, subject to the following:

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building[2] immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building: (a) The actual cash value of that part of the building damaged; or (b) That proportion of the replacement cost, without deduction for depreciation, for that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

i. A or B at replacement cost without deduction for depreciation, subject to the following: We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in Property Condition 3. Loss

[1] The casita in issue is "not used as a residence."
[2] There is no dispute that the roofing damage is less than 80% of the full replacement cost of the dwelling.

Settlement b.(1). . . We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in Property Condition 3. Loss Settlement b.(1) and b.(2)."

30. Travelers attempted to apply both a deductible and depreciation from the claim of Consumers, in contravention of the express promises in its policy of insurance.

31. While Travelers could likely postpone payment of the decking/underlayment work until after it was completed under the terms of the policy, Travelers has at various times demanded that Consumers provide it with copies of local building codes to justify replacement of the roof decking.

32. Any reasonably competent insurance adjuster who handles roofing claims in New Mexico should be familiar with such codes and requirements and it is an unfair or deceptive trade practice for an insurer to "push" such tasks onto an insured when the custom and practice in the industry is for an adjuster to be able to evaluate or obtain such building codes.

33. Consumers submitted a complaint to the Office of the Superintendent of Insurance ("OSI") in October, 2024 regarding Traveler's refusal to complete the claim and refusal to pay for repairs.

34. On or about 1/30/2025, an employee of Travelers, Saul E. Mota, Jr., wrote an email to the OSI staff person (Monica Madrid) who was assisting with Consumers' complaint.

35. In this email, Mota essentially admitted that Traveler's initial inspection and claims process failed to take into account the building code requirements of Consumers' municipality.

36. In the 1/30/2025 email, Mota told Madrid that Traveler's claims adjuster would, finally, adjust the claim and payment amount to reflect the need for additional roofing work to bring the roof up to code.

37. Traveler's was taking no action to assist Consumers with their claim until after Consumers submitted their complaint to the OSI.

38. Such facts and circumstances support the conclusion that Traveler's will not reasonably assist its insureds unless the consumers/insureds file a complaint with a government regulator of insurance.

39. Traveler's pattern and practice of "pushing the research and work" onto its own insured constitutes unfair and unreasonable claims processing and handling, particularly when building codes and other regulations are publicly available and should be known to a reasonably competent insurance adjuster who handles roofing claims.

40. Such conduct benefits Travelers by imposing obstacles to the insured in obtaining the coverage for which he/she/they paid for in insurance premiums and thus makes it less likely that Travelers will have to pay on a claim, which inures to its own benefit over the benefit to its insured.

41. Such conduct is an unfair and deceptive insurance trade practice because it tends to state or imply to the consumer/insured that a large national insurance

company and its adjusters are unable to obtain building codes and/or are unfamiliar with standard building codes.

42. The Unfair Insurance Practices Act, Section 59A-16-20, bans an insurer from failng to adopt and implement reasonable standards for the prompt investigation and processing of an insureds' claims. Defendant Travelers violated this section of the NMUIPA.

43. The sale of the Policy by Travelers, Advanced and Carrasco violated Section 59A-16-4 by failing to disclose the material terms of the policy including the "you pay for it now, we will reimburse you later" aspect of its claims process or terms.

44. The Unfair Insurance Practices Act, Section 59A-16-4, bans an insurer from failing to "disclose material facts reasonably necessary to prevent other statements made from being misleading." Defendant Travelers violated this section of the NMUIPA.

45. Travelers admitted in writing to the OSI that its adjuster improperly applied a deductible to the loss even though the "wind/hail" provision of the policy does not permit any deductible.

46. Travelers has violated the Unfair Insurance Practices Act ("**UIPA**"), Section 59A-16-20, by, among other things:

A. Misrepresenting to Consumers the facts and policy provisions relating to the damage to the Casita and its repairs.

B. Failing to adopt and implement reasonable standards for the prompt investigation and process of its insureds' claims;

C. Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Consumers' claim.

D. Compelling insureds to institute litigation to recover amounts due under the policy by offering substantially less than the amounts the insurer either knows or should know that it should pay in reasonably similar circumstances.

47. Wherefore, Travelers is liable to Consumers for actual damages, attorneys' fee and costs under the UIPA in amounts to be determined at trial.

**COUNT II – NEGLIGENCE (ADVANCED AND CARRASCO)**

48. All foregoing allegations are re-alleged here.

49. In connection with the sale of the Policy to Consumers, Advanced and its employee Carrasco owed a duty of care to Consumers.

50. At all times material to these allegations, Carrasco was acting in the course and scope of her agency or employment with Advanced and/or Advanced clothed Carrasco with ostensible agency on its behalf.

51. Consumers were the customers of Advanced and Carrasco.

52. Consumers relied upon Advanced and Carrasco to help with selection of insurance policies or products that would protect their interests in connection with their home, related structures and their personal property.

53. Advanced and Carrasco never disclosed to Consumers any facts or terms regarding those aspects of the Policy that require a homeowner to "pay first, get reimbursed later" for certain repairs.

54. Advanced and Carrasco failed to use due care and the skill required of a reasonably competent insurance agent or agency in the sale of the policy to Consumers including by omitting material facts that led to deception or a misrepresentation of the value and benefits of the Policy.

55. Advanced and Carrasco's conduct fell below the standard of care for an insurance agent and agency in connection with the sale of the policy to Consumers.

56. Consumers have suffered damages from such negligence by Advanced and Carrasco, including the fact that the Policy imposes harsh and atypical terms upon Consumers.

57. Wherefore, Advanced and Carrasco are liable to Consumers in amounts to be determined at trial.

**COUNT III – VIOLATION OF THE UPA (ADVANCED AND CARRASCO)**

58. All foregoing allegations are re-alleged here.

59. The sale of insurance in New Mexico is the sale of a service and thus it is governed by the Unfair Practices Act ("**UPA**"), NMSA 1978, § 57-12-1, *et seq*.

60. Advanced and its agent or employee Carrasco made representations to Consumers in connection with the sale of the Policy.

61. The UPA is to be construed liberally in favor of consumers because it is a remedial consumer-protection act.

62. The UPA does not require any intent to deceive or any reliance by the consumer.

63. The UPA does not require any showing of actual damages because it provides for statutory damages.

64. Advanced and Carrasco made misrepresentations and material omissions that tended to deceive or cause confusion about the key benefits of the Policy, including that this Policy has a "fix it now on your dime, we will pay you back later" provision or term for weather-damage to structures covered by the Policy.

65. Wherefore Consumers seek amounts to be determined at trial for their actual damages, in addition to reasonable attorneys' fees and costs pursuant to NMSA 1978, § 57-12-10.

**COUNT IV – DECLARATORY JUDGMENT**

66. All foregoing allegations are re-alleged here.

67. There is a present controversy regarding the legality and enforceability of the Policy.

68. Consumers aver that the terms of the Policy are grossly unfair and are contrary to New Mexio law.

69. Consumers aver that the sale of the Policy to them was procured by misrepresentations and/or unfair or deceptive trade practices.

70. Thus, Consumers state that the Policy should be revised or amended by the Court such that the unlawful and unfair terms are excluded and that Consumers be placed in the position they would have been in had the Policy had the usual and customary terms of such a policy of insurance, to wit: striking the "you fix it, we will pay you later" terms for repairs of hail or wind damage to structures.

WHEREFORE, Consumers seek a trial whereby they can seek an award or judgment in their favor and against Defendants for:

A. Actual damages;

B. Statutory Damages;

C. Treble Damages;

D. Declaratory Judgment;

E. Attorneys' Fees and Costs;

F. Other costs as allowed by Court Rule;

G. Any other damages allowed by law or rule;

H. Any other relief this court deems just and proper.

Respectfully Submitted,

LAW OFFICE OF DAVID C. KRAMER, LLC.

*/s/ David C. Kramer*
David C. Kramer, Esq.
P.O. Box 4662
Albuquerque, NM 87196
Telephone: (505) 545-8105
david@davidckramerlaw.com

**Certificate of Service:**

I certify that on **November 22, 2026,** I caused the foregoing pleading to be submitted for filing with the CM/ECF file-and-serve system. This filing or submission should cause all linked parties to be served via electronic means with this pleading at the time that the submission is electronically processed by that system or by the Court.

___*/s/ David C. Kramer*___